1  FELDESMAN TUCKER LEIFER FIDELL LLP
   Kathryn Doi (SBN 121979)
2  400 Capitol Mall, Suite 2580
   Sacramento, CA 95814
3  T. 916.500.0755
   F. 916.500.0748
4  kdoi@ftlf.com

5  FELDESMAN TUCKER LEIFER FIDELL LLP
   Matthew Sidney Freedus (DC 475887)*
6  1129 20th Street NW, 4th Floor
   Washington, DC 20036
7  T. 202.466.8960
   F. 202.293.8103
8  mfreedus@ftlf.com

9  *An application for *pro hac* admission is being filed
   contemporaneously herewith
10
   *Counsel for Defendant*
11 *Petaluma Health Center, Inc.*

12

13              **UNITED STATES DISTRICT COURT**

14          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

15  DARLENE GERSON, individually and as next        Case No.:
    friend on behalf of J.J. (minor), and on behalf
16  of all others similarly situated,               **DEFENDANT PETALUMA HEALTH
                                                     CENTER, INC.'S NOTICE OF
17              *Plaintiff(s),*                      REMOVAL PURSUANT TO 42
                                                     U.S.C. § 233(*l*)(2) AND 28 U.S.C. §
18              v.                                   1442**

19  PETALUMA HEALTH CENTER, INC.,                    **[FEDERAL DEFENDANT]**

20              *Defendant.*

21

22      **TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

23      **PLEASE TAKE NOTICE** that pursuant to 42 U.S.C. § 233(*l*)(2) and 28 U.S.C. § 1442,

24  and on the grounds set forth below, Defendant Petaluma Health Center, Inc. ("Petaluma Health")

25  hereby removes to this Court the civil action of Plaintiff Darlene Gerson, styled *Darlene Gerson,*

26  *individually and as next friend on behalf of J.J. (minor), and on behalf of all others similarly situated*

27  *v. Petaluma Health Center, Inc.*, Case No. SCV-273620, commenced on or about June 30, 2023 in

28  the Superior Court of the State of California for the County of Sonoma. A copy of the complaint is

-1-

attached hereto as Exhibit A. In support of this Notice of Removal, Petaluma Health states the following:

1.      Petaluma Health is a community health center recipient of federal grant funds under Section 330 of the Public Health Service Act (codified at 42 U.S.C. § 254b *et seq.*). As such, and for all relevant times, Petaluma Health applied for and received federal status as a "deemed" Public Health Service (PHS) employee for purposes of the protection afforded by 42 U.S.C. § 233(a). This deemed status is confirmed in a Notice of Deeming Action from the Secretary of the United States Department of Health and Human Services. *See* Declaration of Pedro Toledo (Toledo Decl.), Ex. 1 (Deeming Application), Ex. 2 (Notice of Deeming Action).

2.      The protection that Petaluma Health's deemed status affords is an absolute immunity from *any* civil action or proceeding resulting from its performance of (or alleged failure to perform) medical or related functions within the scope of its deemed federal employment. 42 U.S.C. § 233(a), (g), and (h).

3.      This action falls squarely within that statutory protection. *See Mixon v. CareSouth Carolina, Inc.*, Case No. 22-cv-00269, 2022 WL 1810615 *4-8 (D.S.C. June 2, 2022) (C.J., Harwell) (granting deemed health center defendant's motion to substitute United States, over its objection, in a putative class action arising out of health center's alleged failure to safeguard personal and confidential information of current and former patients); *Ford v. Sandhills Medical Foundation, Inc.*, Case No. 4:21-cv-02307-RBH,  2022 WL 1810614 (D.S.C. June 2, 2022) (same), *appeal filed*, No. 22-2268 (4th Cir., December 9, 2022); *Doe v. Neighborhood Healthcare*, No. 21-cv-1587, 2022 WL 17663520 at *7 (S.D. Cal. Sept. 8, 2022) (agreeing with *Mixon* and *Ford* that "failures by the health centers to maintain the confidential nature of the records constituted a medical or related function" within the meaning of 42 U.S.C. § 233(a)); *see also Kezer v. Penobscot Cmty. Health Ctr.*, No. 15-cv-225, 2019 BL 141566 at *8 (D. Me. Mar. 21, 2019) (concluding deemed PHS defendants' accessing the plaintiff's confidential medical record constituted a related function as "the performance of quality improvement and quality assurance activities . . . are patently related to the provision of medical services") (rejecting argument that "233(a) immunity applies only to 'medical malpractice" claims against medical providers involving improper medical treatment, not to a breach

of the duty created by HIPPA (*sic*) to safeguard Ms. Kezer's medical records") (noting also the Government "conced[ed] . . . that the 'maintenance of the confidentiality of [the plaintiff's] mental health medical records constituted a covered medical or related function' under the language of § 233(a)." *Id*. at 2019 BL 141566, at *6 (quoting Government's brief)); *Mele v. Hill Health Ctr.*, No. 3:06-cv-00455, 2008 WL 160226, at *3 (D. Conn. Jan. 8, 2008) (concluding claim resulting from improper disclosure of medical information "concern[ed] the medical functions of providing treatment and the related function of ensuring the privacy of patient medical information," and was "covered by section 233(a)" immunity); *but see Marshall v. Lamoille Health Partners, Inc.*, No. 2:22-cv-166, 2023 WL 2931823, at *4 (D. Vt. Apr. 13, 2023), *appeal filed*, No. 23-800 (2d Cir., May 12, 2023).

4.      According to the operative complaint, this civil action arises out of Petaluma Health's alleged failure to secure and safeguard protected health information and other confidential information (referred to herein collectively as Protected Information or "PI") related to the provision of health care services to its patients. The complaint alleges, in essence, that: (1) Petaluma Health owes a duty to plaintiff and the putative class members—arising out of their patient-provider relationship—to implement and maintain reasonable and adequate systems and procedures for protecting and safeguarding the confidentiality of their PI against loss and unauthorized use; (2) Petaluma Health breached that duty by failing to implement and maintain reasonable security procedures and practices to protect plaintiff and the putative class members' PI from unauthorized access and disclosure; and, as a result, (3) a party gained unauthorized access to and stole plaintiff and the putative class members' PI from Petaluma Health's electronic health record system. Ex. A., (Compl.) at ¶¶ 7, 76, 156.

5.      Plaintiff seeks damages and other remedies based on claims of negligence, breach of implied contract, breach of fiduciary duty, unjust enrichment, declaratory judgment, violation of California Consumer Privacy Act, Cal. Civ. Code § 1798.80 et seq., violation of California Customer Records Act, violation of California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq., invasion of privacy, public disclosure of private facts, and California Constitutional right to privacy. *Id*. at ¶¶ 17, 148-262.

**JURISDICTION**

**Deemed Federal Employee Removal—42 U.S.C. § 233(*l*)(2)**

6.      The Court has jurisdiction under 42 U.S.C. § 233(*l*)(2), a federal officer removal statute enacted specifically for the benefit of deemed PHS employees (such as Petaluma Health). Section 233(*l*)(2) provides a deemed individual or entity the right to a federal forum for a judicial determination as to the availability of a federal immunity defense. *Campbell v. S. Jersey Med. Ctr.*, 732 F. App'x 113 (3d Cir. 2018) (recognizing this statutory purpose of § 233(*l*)(2)); *see also Booker v. United States*, Case No. 13–1099, 2015 WL 3884813 *7 (E.D. Pa. June 24, 2015) (recognizing "removal pursuant to § 233(*l*)(2) serves the same purpose as procedure contemplated by [28 U.S.C.] § 2679(d)(3)"]). The PHS Act imposes no time limit on § 233(*l*)(2) removals. *Estate of Booker v. Greater Philadelphia Health Action*, 10 F.Supp.3d 656, 665-66 (E.D. Pa. 2014) ("The fact that § 233(*l*)(2) was added to a statutory scheme in which suits against health centers were removable at any time before trial provides a basis to infer that Congress intended the same time frame to govern removals by the health centers themselves"); *Campbell*, 732 F. App'x at 118 (42 U.S.C. § 233(*l*)(2) removal is not permitted *after* entry of default judgment as that is no longer "before trial" within the meaning of § 233(c)); 42 U.S.C. § 233(c) (permits Attorney General to remove state actions on behalf of actual and deemed PHS employees "any time before trial"). Given the commanding language and unmistakable thrust of § 233(*l*), this provision should be broadly construed to facilitate the removal, hearing, and judicial determination expressly contemplated therein. *Cf. Willingham v. Morgan,* 395 U.S. 402, 406–407 (1969) (construing federal officer removal statute, 42 U.S.C. § 1442, broadly in favor of a federal forum to ascertain the availability of a federal defense arising out of official conduct). Section 233(*l*)(2), like the general officer removal statute (28 U.S.C. § 1442), operates as an exception to the well-pleaded complaint rule. *Campbell*, 732 Fed. Appx. at 117 ("For section 233(*l*)(2) to have any effect, a district court must at least have jurisdiction to substitute the United States when it is appropriate to do so.").

**Federal Officer Removal—28 U.S.C. § 1442**

7.      The Court also has jurisdiction under 28 U.S.C. § 1442(a)(1), the general officer removal statute. Section 1442(a)(1) affords a right of removal to "any officer (or any person acting

under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office." 28 U.S.C. § 1442(a)(1). The statute permits removal even when the underlying federal question arises only as a defense to a state-law claim. *See Jefferson County v. Acker*, 527 U.S. 423, 431 (1999); *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 644 n.12 (2006) (noting federal officer removal statute operates as an exception to the "well-pleaded complaint" rule). The general officer removal statute protects important federal interests and must be broadly construed in favor of a federal forum. *See Colorado v. Symes*, 286 U.S. 510, 517 (1932) ("It scarcely need be said that such measures [allowing for federal officer removal] are to be liberally construed to give full effect to the purposes for which they were enacted."), *Willingham*, 395 U.S. at 406–07.

8.     Pursuant to 42 U.S.C. § 1442(a)(1), Petaluma Health is a federal officer. When broadly construed, as required, the phrase "any officer" in § 1442 can be read to include Petaluma Health as it is "deemed to be an employee of the Public Health Service" under a federal statute that not only affords Petaluma Health a federal immunity defense but affords an additional removal right as well.

9.     Alternatively, Petaluma Health qualifies as a person acting under a federal officer. *Agyin v. Razmzan*, 986 F.3d 168, 177 (2d Cir. 2021) (holding that (a) individual deemed PHS employee's removal under 42 U.S.C. § 1442 was proper because, as an employee of a deemed health center entity, he was acting under a federal officer with respect to medical and related functions performed on behalf of the health center entity, and (b) deemed PHS employee enjoyed "the same legal immunity that is extended to employees of the Public Health Service")); *see also* H.R. Rep. 104-398, reprinted in 1995 U.S.C.C.A.N. 767, 774 (indicating congressional intent that deemed PHS employees be "covered for malpractice claims under the [FTCA] in the same manner as are employees of the Public Health Service"); *see also Friedenberg v. Lane Cnty.*, 68 F.4th 1113 (9th Cir. May 19, 2023) (reversing district court's denial of substitution in a state court action deemed PHS employees removed to federal court pursuant to 28 U.S.C. § 1442 and 42 U.S.C. § 233) (citing H.R. Rep. No. 104-398, at 4, for the point that "Congress intended for deemed PHS employees to receive protection 'in the same manner' as traditional PHS employees during the coverage period").

10.     To invoke § 1442(a)(1), a defendant who is not a federal officer must demonstrate that (1) he or she or it is a "person" under the statute (2) who acted 'under color of federal office' and (3) has a "colorable federal defense." 42 U.S.C. § 1442(a)(1). As a nonprofit corporation, which operates a federal grant project on behalf of HHS, Petaluma Health qualifies as a person within the meaning of § 1442. *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 135 (2d Cir. 2008) (finding that the "term 'person' includes corporate persons"). Petaluma Health "acted under" an office of HHS to "assist, or to help carry out, the duties or tasks of the federal superior." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 149 (2007); 42 U.S.C. § 254(*o*) (the central office of the Health Resources and Services Administration administers Health Center grant program on behalf of the HHS Secretary). In particular, Petaluma Health is statutorily obligated to serve an area or population that the HHS Secretary designated as "medically underserved." *Id*. at 254b(a)(1). Petaluma Health is therefore supporting the mission of the actual PHS by performing functions that would otherwise fall within PHS responsibilities.

11.     Petaluma Health is subject to detailed federal requirements, oversight, and control. *See* H.R. Rep. No. 102-823 at 5 ("Federal requirements associated with the grants are administratively burdensome and address all areas of operation."); *accord Agyin*, 986 F.3d at 177 (concluding community health center was "subject to federal oversight and control" sufficient to render health center physician "acting under" a federal officer for 28 U.S.C. § 1442(a)(1)). Among these requirements is the obligation to "have an ongoing quality improvement systems that includes clinical services and management, and that maintains the confidentiality of patient records." 42 U.S.C. § 254b(k)(3)(C) (emphasis added) (prohibiting HHS's approval of a health center's grant application absent a determination of compliance with this requirement); *see also* 42 C.F.R. § 51c.110 ("All information as to personal facts and circumstances obtained by the project staff about recipients of services shall be held confidential, and shall not be divulged without the individual's consent. . . ."); 42 C.F.R. § 51c.303 ("A community health center supported under this subpart must . . . [i]mplement a system for maintaining the confidentiality of patient records in accordance with the requirements of § 51c.110 of subpart A.").

///

DEFENDANT PETALUMA HEALTH CENTER, INC.'S NOTICE OF REMOVAL
PURSUANT TO 42 U.S.C. § 233(*l*)(2) AND 28 U.S.C. § 1442

12.    Petaluma Health's deemed federal status is irrevocable and affords "the same" federal immunity that an actual PHS employee enjoys under 42 U.S.C. § 233(a). 42 U.S.C. § 233(g)(1)(A) (making remedy against United States "exclusive of any other civil action or proceeding *to the same extent* as the remedy against the United States is exclusive pursuant to subsection (a)") (emphasis added), (F) (providing that deemed status is "final and binding" on the Secretary, the Attorney General, and all parties to litigation). For purposes of § 1442, Petaluma Health's federal defense is "colorable," to the say the least.

## PARTIES

13.    Defendant Petaluma Health is a California-based nonprofit organization that receives federal funding under Section 330 of the PHS Act (42 U.S.C. § 254b) to operate a community-based health center project that provides primary and related health care services to medically underserved residents in and around Sonoma and Marin Counties, regardless of any individual's ability to pay for the services. *See* 42 U.S.C. § 254b(a), (b), (j), (k). Petaluma Health serves specific geographic areas that the HHS Secretary has designated as "medically underserved." *Id*. at 254b(a)(1). *See* Ex. A, Compl., at ¶ 1, 17, 24, 25, 27-30.

14.    According to her complaint, Plaintiff Darlene Gerson is a resident of Sonoma County in Petaluma, California and was a patient of Petaluma Health. *See* Ex. A, Compl., at ¶ 19, 27.

## STATUTORY FRAMEWORK

15.    Under the Emergency Health Personnel Act of 1970, Pub. L. No. 91-623, § 4, 84 Stat. 1868, 1870-71 (1970), codified at 42 U.S.C. § 233, PHS personnel are absolutely immune from any civil action or proceeding arising out of their performance of medical, surgical, dental or related functions within the scope of their employment. 42 U.S.C. § 233(a). Section 233(a) extends absolute immunity to PHS personnel by making the remedy for damages against the United States under the FTCA the *exclusive* remedy for such actions. *Id*.

16.    To facilitate the legislative objective of ensuring medical services in underserved areas, 42 U.S.C. § 233(a) shields PHS personnel from personal liability arising out of their performance of medical, surgical, dental, and related functions. Without such protection, reports suggest that the cost of professional liability insurance would greatly hinder or altogether preclude

the performance of those duties. *See* § 2, 84 Stat. 1868; H.R. Rep. No. 1662, 91st Cong., 2d Sess. 1 (1970); 116 Cong. Rec. 42,543 (1970) (Rep. Staggers, the House of Representatives sponsor, stating that PHS physicians "cannot afford to take out the customary liability insurance as most doctors do," "because of the low pay that so many of those who work in the [PHS] receive."). To achieve its purpose, the grant of absolute immunity to PHS personnel under 42 U.S.C. § 233(a) is "broad" and "comprehensive." *Hui v. Castaneda*, 559 U.S. 799, 806 (2010).

17.    The Federally Supported Health Centers Assistance Act of 1992 (and as amended in 1995) (the "FSHCAA"), codified at 42 U.S.C. § 233(g) *et seq*., authorizes the Secretary of the U.S. Department of Health and Human Services (HHS) to extend to certain federally funded health centers and their officers, directors, and employees (and certain contractors) the same protection that § 233(a) affords to actual PHS employees. That protection is an "*absolute immunity . . . for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct*." *Hui*, 559 U.S. at 806 (emphasis added); 42 U.S.C. § 233(g)(1)(B) (extending 233(a) immunity to deemed PHS employees "to the same extent" as it is afforded to actual PHS employees).

18.    To qualify as a deemed entity for § 233(a) immunity, a health center grantee must submit an application with detailed information and supporting documentation sufficient for the HHS Secretary to verify that the coverage should apply to all services provided by the health center to patients and in certain circumstances non-patients of the center. The applicant is also required to demonstrate that the health center meets four requirements listed in § 233(h), including a requirement to "implement[] appropriate policies and procedures to reduce the risk of malpractice *and the risk of* lawsuits *arising out of any health or health-related functions performed by the entity*." 42 U.S.C. § 233(g)(1)(D) and (h) (emphasis added).

19.    The statute requires the Secretary to make a deeming determination for health centers and their personnel within 30 days of receipt of such an application. *Id*. at § 233(g)(1)(E). The application seeks § 233(a) immunity in advance of and with respect to a specific prospective period (*i.e.*, calendar year). A favorable deeming determination by the Secretary (which confers immunity) is "final and binding" (42 U.S.C. § 233(g)(1)(D)-(F)) on HHS, the Attorney General, and "other

parties to *any* civil action or proceeding." 42 U.S.C. § 233(g)(1)(F) (emphasis added), with respect to the designated period.

20.    By requiring a prompt and advance deeming determination, which constitutes a final and binding determination on all parties for a specified and prospective period, and conferring absolute immunity from any action or proceeding resulting from covered conduct for that period, the FSHCAA is designed to eliminate a federally-funded health center's need to purchase (expensive) private professional liability insurance for actions arising out of the performance of medical or related functions within the scope of their employment and in so doing allows centers to devote their federal grant funds to patient services (rather than insurance premiums). *See* H.R. Rep. 102-823, pt. 1, at 3 (1992).

21.    When a civil action or proceeding is brought against a deemed PHS employee, the entity or individual has a duty to deliver the pleadings to the grantor agency's designated representative, which is HHS's Office of General Counsel (OGC). HHS OGC is, in turn, required to "promptly" provide copies of the pleadings to the Attorney General and appropriate local U.S. Attorney. 42 U.S.C. § 233(b).

22.    Upon notification of a state court action against a deemed individual or entity (which is confirmed by a Notice of Deeming Action), the Attorney General has a mandatory (non-discretionary) duty to appear in that court within 15 days of notice of the lawsuit to report whether the "Secretary has determined under subsections (g) and (h) of [Section 233], that such entity, officer, governing board member, employee, or contractor of the entity is deemed to be an employee of the Public Health Service for purposes of this section with respect to the actions or omissions that are the subject of such civil action or proceeding." *Id*. at § 233(*l*)(1). The report to the state or local court of the HHS Secretary's deeming determination is—for § 233(*l*)(1)'s removal purpose—also "deemed to satisfy the provisions of [42 U.S.C. § 233(c)] that the Attorney General certify that an entity, officer, governing board member, employee, or contractor of the entity was acting within the scope of their employment or responsibility." *Id*. at § 233(*l*)(1); *Cf*. 28 U.S.C. § 2679(d)(3). "Naturally, the availability of a judicial hearing does not mean that the Government's view of the rights and responsibilities of the parties will be determined to have been in error, but it does mean

1  that the issue will be determined by a judge and subject to appellate review." *Kezer v. Penobscot*

2  *Cmty. Health Ctr.*, No. 15-cv-00225-JAW, 2016 BL 516708, at \*7 (D. Me. Aug. 15, 2016) (citing

3  *Hui*, 559 U.S. at 811) ("To be sure, [§ 233(a)] immunity is contingent upon the alleged misconduct

4  having occurred in the course of the PHS defendant's duties, but a defendant may make that proof

5  subject to the ordinary rules of evidence and procedure.").

6       23.    If, despite that mandatory duty, the Attorney General (or his or her authorized

7  representative) fails to appear in the state court action or proceeding within 15 days of notice of the

8  state action for the purpose of removing it to federal court, 42 U.S.C. § 233(*l*)(1) (mandatory

9  appearance serves a singular purpose), the deemed entity or individual has an absolute right to

10  remove the matter to the appropriate federal district court, without any time limit for doing so. *Id*.

11  at § 233(*l*)(2). Section 233(*l*)(2) provides "supplemental removals rights to persons in a specific

12  situation, even though such persons also may sometimes remove under [28 U.S.C.] § 1442,"

13  which is the general officer removal statute. *Agyin*, 986 F.3d at 180.

14       24.    Upon removal, the state court proceeding is stayed, by operation of law, until the

15  federal district court conducts a "hearing" to determine the proper forum or procedure and issues an

16  order consistent with its determination. 42 U.S.C. § 233(*l*)(2).

17       25.    The hearing in federal district court following § 233(*l*)(2) removal allows a deemed

18  entity or individual to challenge the federal government's failure or refusal to certify that the deemed

19  defendant was performing medical or related functions within the scope of its (his or her)

20  employment as a deemed Public Health Service employee with respect to claims against it (him or

21  her) and substitute the United States as the only proper defendant in its (his or her) place. Where, as

22  here, the claim is covered by the deemed defendant's § 233(a) immunity, § 233(*l*)(2) ensures that

23  the United States is substituted as the only proper defendant its place. *El Rio Santa Cruz*

24  *Neighborhood Health Ctr. v. U.S. Dep't of Health and Human Servs.*, 396 F.3d 1265, 1272 (D.C.

25  Cir. 2005); *see also Booker*, 10 F.Supp.3d at 656.

26  ///

27  ///

28  ///

## FACTUAL AND PROCEDURAL BACKGROUND PERTINENT
## TO THE GROUNDS FOR REMOVAL

26.     Petaluma Health submitted deeming applications for itself and its personnel with respect to calendar year 2023. The HHS Secretary, under 42 U.S.C. § 233(g) and (h), approved the applications and deemed Petaluma Health and its personnel for purposes of the protections afforded under § 233(a) *et seq*. *See* Toledo Decl., Ex. 1 (Deeming Application), Ex. 2 (Notice of Deeming Action).

27.     On or about June 30, 2023, Plaintiff filed a civil action against Petaluma Health in the Sonoma County Superior Court. Petaluma Health received a copy of the summons and complaint by mail on or about July 17, 2023. *See* Toledo Decl., ¶ 7.

28.     On July 17, 2023, Petaluma Health delivered the summons and complaint to HHS OGC and the United States Attorney for the Northern District of California. *See* Toledo Decl., ¶ 8.

29.     On July 26, 2023, Petaluma Health received by regular mail a notice dated six days earlier (July 20) from a representative of the United States Attorney for the Northern District of California to the Sonoma County Superior Court. A copy of the notice is attached as Exhibit B. The notice asserts that it was provided to the state court "pursuant to 42 U.S.C. § 233(l)(1)," but the notice "fails" to do what that provision expressly requires—i.e., advise the state "court as to whether the Secretary has determined under subsections (g) and (h), that [Petaluma Health] is deemed to be an employee of the Public Health Service for purposes of this section with respect to the actions or omissions that are the subject of such civil action or proceeding." 42 U.S.C. § 233(l)(1) (emphasis added). The "advice" called for, and when given, has a singular purpose: "[s]uch advice shall be deemed to satisfy the provisions of subsection (c) that the Attorney General certify that an entity, officer, governing board member, employee, or contractor of the entity was acting within the scope of their employment or responsibility." In this way, § 233(*l*)(1), which was enacted as a removal statute for the benefit of deemed PHS employees, achieves its purpose—to afford a federal forum to ascertain the availability of a federal defense.

30.     Here, the appearance of the Attorney General's representative in state court did nothing to preserve the status quo or protect Petaluma Health, pending a resolution of its claim to

immunity. The Attorney General has, in recent litigation, argued that its appearance in state court precludes jurisdiction and review under § 233(*l*), despite that provision's plain text and purpose to the contrary. In making this argument, the Attorney General has revived a position it correctly abandoned nearly thirty years ago—that it can be the final arbiter of its own scope certifications. *Cf. Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 434 (1995) (noting that "the United States initially took the position that the local United States Attorney's scope-of-employment certifications are conclusive and unreviewable but, on further consideration, changed its position"). Moreover, at the outset of this program, HHS—"in consultation with the Attorney General"—assured deemed PHS defendants that the "determination or certification" by the Attorney General as to any "particular claim or case . . . is subject to judicial review." HHS Notice of Proposed Rulemaking, Federally Supported Health Centers Assistance Act of 1992, 59 FR 42790-01, 1994 WL 445120, at *42792 (Aug. 19, 1994); *see also* HRSA, HHS, FTCA, Health Center Policy Manual, § II, K.1 at p. 20 (acknowledging that Attorney General's "certification or failure to certify is subject to judicial review"), https://bphc.hrsa.gov/sites/default/files/bphc/technical-assistance/ftcahc-policymanual.pdf; *see also* HHS Notice of Proposed Rulemaking, Federally Supported Health Centers Assistance Act of 1992, 59 FR 42790-01, 1994 WL 445120 (F.R.) (representing, "in consultation with the Attorney General," that, with respect to a "particular claim or case," a "determination or certification by the Attorney General is subject to judicial review").

31.     Because the Attorney General "fail[ed]" to appear and advise the state court of Petaluma Health's binding status as a PHS employee for calendar year 2023—to effectuate removal under § 233(*l*)(1)—Petaluma Health removed it pursuant to subsection (*l*)(2). Together, these provisions recognize that when a health center is deemed for the period in which the events giving rise to the claim occurred (not when the claim itself is made), a federal forum is the proper place for the threshold immunity determination.

32.     It is well settled that immunity determinations ought to be made at the earliest stages of litigation—in the case in which immunity is asserted—because immunity is not only a defense against liability but a right to be free from the costs and burdens of litigation altogether. 42 U.S.C. § 233(*l*)(1) (requiring the Attorney General to act promptly—within a period that is shorter than a

1    responsive pleading deadline), §233(*l*)(2) (imposing a stay of proceedings pending a hearing in

2    federal court and a threshold immunity determination). *Cf. Saucier v. Katz*, 533 U.S. 194, 200–01

3    (2001) ("an immunity from suit rather than a mere defense to liability . . . like an absolute immunity

4    . . . is effectively lost if a case is erroneously permitted to go to trial" (citing *Mitchell v. Forsyth*,

5    472 U. S. 511, 526 (1985))), *Mitchell*, 472 U.S. at 525 ("the essence of absolute immunity is its

6    possessor's entitlement not to have to answer for his conduct in a civil damages action").

7    **PETALUMA HEALTH'S ABSOLUTE IMMUNITY**

8    **COVERS THIS ACTION**

9       33.    As previously stated, § 233(a) provides absolute immunity to deemed PHS

10   employees "for damage for personal injury, including death, *resulting from the performance of*

11   *medical*, surgical, dental, *or related functions*, […] while acting within the scope of his office or

12   employment." 42 U.S.C. § 233(a), (g).

13      34.    The immunity provided under § 233(a) is not limited to medical malpractice but

14   encompasses any action or proceeding arising out of "medical … or *related functions"—i.e.*,

15   functions that are related to the performance of medical, surgical, or dental functions. 42 U.S.C. §

16   233(a); *Hui*, 559 U.S. at 806 (immunity is broad enough to "easily accommodate both known and

17   unknown causes of action"); *Friedenberg v. Lane Cnty.*, 68 F.4th 1113, 1128 (9th Cir. 2023) ("the

18   scope of § 233 immunity does not depend on whether the claim is framed as one of medical

19   malpractice, but rather whether the claim is the result of the defendant's "performance of medical,

20   surgical, dental, or related functions") (citing 42 U.S.C. § 233(a) and (g)). The agency's interpretive

21   FSHCAA regulation reflects the statute's broad grant of immunity, recognizing (in health center

22   grant parlance) that § 233(a) covers "acts or omissions related to the grant-supported activity" of

23   deemed health centers. 42 C.F.R. § 6.6(d); *see also Z.B. ex rel. Next Friend v. Ammonoosuc*

24   *Community Health Services, Inc.*, 2004 WL 1571988, *4 (D. Me. June 13, 2004) (phrase "related

25   to" in the FSHCAA regulation recognizes that § 233(a) immunity extends beyond the mere act of

26   providing medical care); *see also Pinzon v. Mendocino Coast Clinics Inc.*, Case No. 14–cv–05504–

27   JST, 2015 WL 4967257 at *1 (N.D. Ca. 2015 Aug. 20, 2015) (granting, over objection, motion by

28   United States to substitute itself in place of deemed health center defendant in civil action asserting

-13-

1   claims for, among other things, violation of "the Americans with Disabilities Act," "Civil Rights

2   Act of 1964," and "Health Insurance Portability and Accountability Act of 1996"); *Pomeroy v.*

3   *United States*, 2018 WL 1093501, at *2 (D. Mass. Feb. 27, 2018) ("The statute must cover a broader

4   scope of activity than the delineated categories alone, or else 'related functions' would be mere

5   superfluity.") (quoting *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) for proposition that statutes

6   should "be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous,

7   void, or insignificant").

8        35.    This action against Petaluma Health resulted from its performance (or alleged failure

9   to perform) "medical … or related functions" within the scope of its deemed federal employment.

10  42 U.S.C. §§ 233(a), 254(b). The Complaint acknowledges, and in many ways hinges on, the

11  inextricable link between the provision of health care and the confidentiality of patient information.

12  Ex. A, Compl. at ¶ 96 ("As a condition of receiving [Petaluma Health's] medical services, [Petaluma

13  Health] required that both adult and minor patients (through their parents ~d/or legal guardians)

14  provide their Private Information. Each of the Plaintiffs and Class members provided their Private

15  Information to [Petaluma Health]."), 149 ("[[Petaluma Health] required Plaintiff(s) and Class

16  Members to submit non-public personal information in order to obtain healthcare/medical

17  services.").

18       36.    The protection of patient privacy and the maintenance of patient confidentiality have

19  long been woven into the fabric of care. The classical version of the Hippocratic oath, in translation,

20  provides: "What I may see or hear in the course of the treatment or even outside of the treatment in

21  regard to the life of men, which on no account one must spread abroad, I will keep to myself . . ."

22  Ludwig Edelstein, The Hippocratic Oath: Text, Translation, and Interpretation (1943). A pledge to

23  privacy has been included in the code of ethics of nearly all health care professionals in the United

24  States, beginning with the American Medical Association's 1847 first Code of Ethics. Institute of

25  Medicine, Committee on Health Research and the Privacy of Health Information, Beyond the

26  HIPAA Privacy Rule: Enhancing Privacy, Improving Health Through Research, 86 (2009),

27  https://www.ncbi.nlm.nih.gov/books/NBK9579/. The current American Medical Association's

28  Code of Medical Ethics mandates that "[p]hysicians must seek to protect patient privacy in all

settings to the greatest extent possible," as "protecting information gathered in association with the care of the patient is a core value in health care." American Medical Association (hereinafter "AMA"), Code of Ethics § 3.1.1, Privacy in Health Care, https://code-medical-ethics.ama-assn.org/ethics-opinions/privacy-health-care; see also AMA Code of Medical Ethics § 3.3.2 Confidentiality & Electronic Medical Records, https://code-medical-ethics.ama-assn.org/ethics-opinions/confidentiality-electronic-medical-records ("Information gathered and recorded in association with the care of a patient is confidential, regardless of the form in which it is collected or stored."). The Ethics Code further counsels that "respecting patient privacy in other forms is also fundamental, as an expression of respect for patient autonomy and a prerequisite for trust." AMA Code of Ethics § 3.1.1 (privacy protections extend to physical, informational, decisional, and associational forms of privacy); *see also* AMA, Opinion 3.2.1: Confidentiality, https://code-medical-ethics.ama-assn.org/ethics-opinions/confidentiality ("Patients need to be able to trust that physicians will protect information shared in confidence. . . Physicians in turn have an ethical obligation to preserve the confidentiality of information gathered in association with the care of the patient."); American Medical Association, Opinion 3.2.4: Access to Medical Records by Data Collection Companies, https://code-medical-ethics.ama-assn.org/ethics-opinions/access-medical-records-data-collection-companies ("Information gathered and recorded in association with the care of a patient is confidential . . . . Disclosing information to third parties . . . without consent undermines trust, violates principles of informed consent and confidentiality, and may harm the integrity of the patient-physician relationship.").

37.    Consistent with these longstanding principles, the statutory structure and design of the Health Center Program recognizes that privacy and confidentiality are fundamental aspects of medical care from initial patient encounters, through necessary care coordination, to the use of patient data in required ongoing quality assurance and quality improvement activities. Indeed, health centers are statutorily mandated, as a condition of both their receipt of federal funding and their deemed status, to protect and safeguard the confidentiality of patient information. 42 U.S.C. § 254b(k)(3)(C) (requiring quality improvements systems that "maintains the confidentiality of patient records"), § 233(h)(1) (requiring "appropriate policies and procedures to reduce the risk of

-15-

malpractice and the risk of lawsuits arising out of any health or health-related functions performed by the entity"); *see also* 42 C.F.R. § 51c.110 ("All information as to personal facts and circumstances obtained by the project staff about recipients of services shall be held confidential, and shall not be divulged without the individual's consent…"); 42 C.F.R. § 51c.303 ("A community health center supported under this subpart must . . . [i]mplement a system for maintaining the confidentiality of patient records in accordance with the requirements of § 51c.110 of subpart A.").

38.    In the HHS-prescribed deeming application, 42 U.S.C. § 233(g)(1)(D), Petaluma Health was required to assure HHS it would "implement and maintain systems and procedures for protecting the confidentiality of patient information and safeguarding this information against loss, destruction, or unauthorized use, consistent with federal and state requirements." *See* HHS, Health Resources and Services Administration, Application for Health Center Program Award Recipients for Deemed Public Health Service Employment with Liability Protections Under the Federal Tort Claims Act, at 14, available at https://bphc.hrsa.gov/sites/default/files/bphc/compliance/pal-2023-01.pdf. At the same time, Petaluma Health had to acknowledge that its "failure to implement and maintain systems and procedures for protecting the confidentiality of patient information and safeguarding this information against loss, destruction, or unauthorized use, consistent with federal and state requirements, may result in disapproval of [the HHS] deeming application." *Id*. Because HHS has identified "confidentiality and security" of patient information as one of the "*areas/activities of highest clinical risk* for the health center," a health center applicant is also required to develop, implement, and document the completion of an "annual health care risk management training plan for staff members" that included, among other things, training on "*HIPAA medical record confidentiality requirements*" and "*other applicable medical record confidentiality records*." *Id*. at 10-11(emphasis added).

39.    Little analysis is required to recognize that the alleged acts or omissions in the Complaint are "related to" Petaluma Health's statutorily required and "grant supported" functions. 42 C.F.R. § 6.6(d). *Compare* Ex. A (Compl.) at ¶¶ 7, 76, 156 (alleging various failures to "implement adequate and reasonable cyber-security procedures and protocols necessary to protect individuals' Private Information," "properly maintain and safeguard its computer systems and its patients' data,"

"use reasonable measures to protect Class Members' Private Information") *with* Toledo Decl., Ex. 3, at 40-41 (Petaluma Health's HHS-Approved Grant Application, explaining that Petaluma Health: "protect[s] the confidentiality of patient information and safeguard[s] it, consistent with federal and state requirements," "manages, analyzes, and identifies all potential risks related to the safety and security of patient health information," "conducts a periodic survey of all computer information systems to determine where electronic Protected Health Information (ePHI) is stored, how it is transmitted, and which employees have access to that information," "conducts a periodic survey of all computer information systems to determine where electronic Protected Health Information (ePHI) is stored, how it is transmitted, and which employees have access to that information," performs a "Risk Analysis … to assess potential risks and vulnerabilities to electronic PHI's confidentiality, integrity, and availability," and "assess[] possible new threats or vulnerabilities associated with newly implemented systems or software programs.").

40.    Among its grant supported activities, Petaluma Health implements "various security measures to reduce risks and vulnerabilities to a reasonably appropriate level to ensure the confidentiality, integrity, and availability of all electronic PHI that PHC creates, maintains, stores or transmits." *Id*. at 41; *see also id*. (describing Petaluma Health's confidentiality agreements for all personnel with access to patient information and periodic training on data security policies and practices).

41.    Courts have held that a deemed PHS defendant's alleged failure to safeguard confidential patient information arises out of a "medical … or related function" within the meaning of 42 U.S.C. § 233(a). *See, e.g.*, *Neighborhood Healthcare*, 2022 WL 17663520 at *7 (citing *Mixon*, 2022 WL 1810615, and *Ford*, 2022 WL 1810614); *see also Kezer v. Penobscot Community Health Center*, 15-cv-225-JAW, 2019 BL 141566 at *6 (D. Me. Mar. 21, 2019) (breach of patient confidentiality claim against deemed PHS employees falls within the scope of § 233(a) immunity, and performance of administrative or operational duties, including the duties the maintain the confidentiality of patient PI, can qualify as "related functions" within the meaning of § 233(a)); *Mele*, 2008 WL 160226, at *3 (claim resulting from improper disclosure of medical information

///

1  "concern[ed] the medical functions of providing treatment and the related function of ensuring the

2  privacy of patient medical information," and was "covered by section 233(a)" immunity).

3        42.    The protection of confidential patient information is not only a medical or related

4  function within the scope of Petaluma Health's deemed PHS employment, *i.e.*, its health center grant

5  project, 42 U.S.C. § 254b, but this action, to the extent it seeks relief *from Petaluma Health*, is

6  rooted in allegations that it failed to adequately perform such functions. Accordingly, Petaluma

7  Health is immune—*i.e.*, not a proper defendant—pursuant to 42 U.S.C. § 233(a) and (g), and

8  plaintiff's exclusive remedy with respect to the alleged acts or omissions of Petaluma Health is a

9  claim against the United States under the FTCA. *See* 42 U.S.C. § 233(a) (remedy against United

10  States provided by FTCA "shall be exclusive of any other civil action or proceeding.").

11                          **OTHER PROCEDURAL REQUIREMENTS**

12        43.    Venue before this court is proper because this Notice of Removal is filed in the

13  federal district court that embraces the place where the local state court matter is pending. *See* 28

14  U.S.C. §§ 1441(a), 84(a).

15        44.    Removal pursuant to 42 U.S.C. § 233(*l*)(2) is timely under the PHS Act's removal

16  scheme because Petaluma Health has filed this notice of removal "before trial." 42 U.S.C. § 233(c).

17        45.    Removal pursuant to 28 U.S.C. § 1442 is timely under 28 U.S.C. § 1446(b)(1)

18  because Petaluma Health has not been served to date but nonetheless is filing this notice of removal

19  within thirty days of its receipt of the summons and complaint by mail. *Agyin,* 986 F.3d at 175

20  (officer removals, unlike general removals under 28 U.S.C. 1441, are to be construed broadly in

21  favor of a federal forum); *Friedenberg,* 68 F.4th at 1123 (same).

22        46.    In addition, a copy of this Notice of Removal will be filed with the clerk of the local

23  state court where this action was filed as soon as a file-stamped copy is available, and notice is being

24  given to plaintiff and the United States Attorney for the Northern District. 28 U.S.C. § 1446(d).

25        47.    Pursuant to 42 U.S.C. § 233(*l*)(2), all proceedings in this case are automatically

26  stayed pending the Court's hearing and threshold immunity determination. 42 U.S.C. § 233(*l*)(2)

27  (upon removal, "[t]he civil action … shall be stayed in ["the appropriate United States district

28  court"] until such court conducts a hearing, and makes a determination, as to the appropriate forum

-18-

or procedure for the assertion of the claim for damages described in subsection (a) and issues an

order consistent with such determination"); *Campbell*, 732 F. App'x at 117 ("For section 233(*l*)(2)

to have any effect, a district court must at least have jurisdiction to substitute the United States when

it is appropriate to do so.").

## CONCLUSION

For the forgoing reasons, the Court should, after conducting a hearing pursuant to 42 U.S.C.

§ 233(*l*)(2), substitute the United States as the only proper defendant in place of Petaluma Health

Center, Inc. in the above-captioned action.

Dated: August 2, 2023                    Respectfully submitted,

FELDESMAN TUCKER LEIFER FIDELL LLP

/s/ *Kathryn Doi*
Kathryn Doi (SBN 121979)
400 Capitol Mall, Suite 2580
Sacramento, CA 95814
T. 916.500.0755
F. 916.500.0748
kdoi@ftlf.com

FELDESMAN TUCKER LEIFER FIDELL LLP
Matthew S. Freedus*
1129 20th Street, N.W., 4th Floor
Washington, DC 20036
Tel: 202.466.8960
mfreedus@ftlf.com

*An application for *pro hac* admission is being filed
contemporaneously herewith

*Counsel for Defendant*
*Petaluma Health Centers, Inc.*